### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

ALAMEDA COUNTY MEDICAL CENTER d/b/a          )
HIGHLAND HOSPITAL                            )
1411 East 31st Street                        )
Oakland, California 94602                    )
                                             )
COMMUNITY HOSPITAL OF THE MONTEREY           )          Case No.
PENINSULA                                    )
23653 Holman Highway                         )
Monterey, California 93942                    )
                                             )
CONTRA COSTA HEALTH SERVICES d/b/a           )
CONTRA COSTA REGIONAL MEDICAL CENTER         )
50 Douglas Drive, Suite 310A                 )
Martinez, California 94553                    )
                                             )
COUNTY OF SAN JOAQUIN d/b/a SAN JOAQUIN       )
GENERAL HOSPITAL                             )
2615 Chester Avenue                          )
Bakersfield, California 93301                 )
                                             )
DIGNITY HEALTH d/b/a BAKERSFIELD             )
MEMORIAL HOSPITAL                            )
420 34th Street                              )
Bakersfield, California 93301                 )
                                             )
DIGNITY HEALTH d/b/a CALIFORNIA HOSPITAL     )
MEDICAL CENTER - LOS ANGELES                 )
1401 South Grand Avenue                      )
Los Angeles, California 90015                 )
                                             )
DIGNITY HEALTH d/b/a CHANDLER REGIONAL       )
MEDICAL CENTER                               )
1955 West Frye Road                          )
Chandler, Arizona 85224                      )
                                             )
DIGNITY HEALTH d/b/a COMMUNITY HOSPITAL      )
OF SAN BERNARDINO                            )
1805 Medical Center Drive                    )
San Bernardino, California 92411             )
                                             )
DIGNITY HEALTH d/b/a DOMINICAN HOSPITAL      )
1555 Soquel Drive                            )
Santa Cruz, California 95065                  )

DIGNITY HEALTH d/b/a GLENDALE MEMORIAL    )
HOSPITAL AND HEALTH CENTER                )
1420 South Central Avenue                 )
Glendale, California 91204                 )
                                          )
DIGNITY HEALTH d/b/a MARIAN REGIONAL      )
MEDICAL CENTER                            )
1400 East Church Street                   )
Santa Maria, California 93454             )
                                          )
DIGNITY HEALTH d/b/a MERCY GENERAL        )
HOSPITAL                                  )
4001 J Street                             )
Sacramento, California 95819              )
                                          )
DIGNITY HEALTH d/b/a MERCY HOSPITAL       )
2215 Truxtun Avenue                       )
Bakersfield, California 93301             )
                                          )
DIGNITY HEALTH d/b/a MERCY HOSPITAL AND   )
HEALTH SYSTEM                             )
301 East 13th Street                      )
Merced, California 95341                  )
                                          )
DIGNITY HEALTH d/b/a MERCY MEDICAL CENTER )
301 East 13th Street                      )
Merced, California 95341                  )
                                          )
DIGNITY HEALTH d/b/a MERCY MEDICAL        )
CENTER REDDING                            )
2175 Rosaline Avenue                      )
Redding, California 96001                 )
                                          )
DIGNITY HEALTH d/b/a MERCY SAN JUAN       )
MEDICAL CENTER                            )
6501 Coyle Avenue                         )
Carmichael, California 95608              )
                                          )
DIGNITY HEALTH d/b/a METHODIST HOSPITAL   )
OF SACRAMENTO                             )
7500 Hospital Drive                       )
Sacramento, California 95823              )
                                          )
DIGNITY HEALTH d/b/a NORTHRIDGE HOSPITAL  )
MEDICAL CENTER                            )
18300 Roscoe Boulevard                    )
Northridge, California 91328              )

DIGNITY HEALTH d/b/a NORTHRIDGE HOSPITAL     )
MEDICAL CENTER – SHERMAN                     )
18300 Roscoe Boulevard                       )
Northridge, California 91328                 )
                                             )
DIGNITY HEALTH d/b/a ST. BERNARDINE          )
MEDICAL CENTER                               )
2101 North Waterman Avenue                   )
San Bernardino, California 92404             )
                                             )
DIGNITY HEALTH d/b/a ST. ELIZABETH           )
 COMMUNITY HOSPITAL                          )
2550 Sister Mary Columba Drive               )
Red Bluff, California 96080                  )
                                             )
DIGNITY HEALTH d/b/a ST. JOHNS REGIONAL      )
HEALTH CENTER                                )
1600 North Rose Avenue                       )
Oxnard, California 93030                     )
                                             )
DIGNITY HEALTH d/b/a ST. JOSEPH'S HOSPITAL   )
AND MEDICAL CENTER                           )
350 West Thomas Road                         )
Phoenix, Arizona 85013                       )
                                             )
DIGNITY HEALTH d/b/a ST. JOSEPH'S MEDICAL    )
CENTER OF STOCKTON                           )
1800 North California Street                 )
Stockton, California 95204                   )
                                             )
DIGNITY HEALTH d/b/a ST. MARY MEDICAL        )
CENTER                                       )
1050 Linden Avenue                           )
Long Beach, California 90813                 )
                                             )
DIGNITY HEALTH d/b/a ST. MARY'S MEDICAL      )
CENTER                                       )
450 Stanyan Street                           )
San Francisco, California 94117              )
                                             )
DIGNITY HEALTH d/b/a ST. ROSE DOMINICAN      )
HOSPITAL, ROSE DE LIMA CAMPUS                )
102 East Lake Mead Parkway                   )
Henderson, Nevada 89015                      )
                                             )
DIGNITY HEALTH d/b/a ST. ROSE DOMINICAN      )
HOSPITAL, SIENA CAMPUS                       )
3001 St. Rose Parkway                        )
Henderson, Nevada 89052                      )

DIGNITY HEALTH d/b/a WOODLAND                )
MEMORIAL HOSPITAL                            )
1325 Cottonwood Street                       )
Woodland, California 95695                   )
                                             )
EL CAMINO HOSPITAL                           )
2500 Grant Road                              )
Mountain View, California 94040              )
                                             )
ENLOE MEDICAL CENTER                         )
1531 Esplanade                               )
Chico, California 95926                      )
                                             )
NORTHBAY HEALTHCARE GROUP d/b/a              )
NORTHBAY MEDICAL CENTER                      )
4500 Business Center Drive, Suite 244        )
Fairfield, California 94534                  )
                                             )
NORTHBAY HEALTHCARE GROUP d/b/a              )
VACAVALLEY HOSPITAL                          )
1000 Nut Tree Road                           )
Vacaville, California 95687                  )
                                             )
PALI MOMI MEDICAL CENTER                     )
98-1079 Moanalua Road                        )
Aiea, Hawaii 96701                           )
                                             )
PRIME HEALTHCARE SERVICES - RENO LLC d/b/a   )
SAINT MARY'S REGIONAL MEDICAL CENTER         )
235 W 6th Street                             )
Reno, Nevada 89503                           )
                                             )
SONOMA VALLEY HEALTH CARE DISTRICT           )
d/b/a SONOMA VALLEY HOSPITAL                 )
347 Andrieux Street                          )
Sonoma, California 95476                     )
                                             )
ST. MARY'S DULUTH CLINIC HEALTH SYSTEM       )
d/b/a ESSENTIA HEALTH ST. MARY'S             )
MEDICAL CENTER                               )
407 East Third Street                        )
Duluth, Minnesota 55805                      )
                                             )
ST. MARY'S DULUTH CLINIC HEALTH SYSTEM       )
d/b/a SMDC MEDICAL CENTER                    )
502 East Second Street                       )
Duluth, Minnesota 55805                      )

STANFORD HOSPITAL & CLINICS d/b/a          )
STANFORD HEALTH CARE                       )
1510 Page Mill Road, 1st Floor, MC 5558    )
Palo Alto, California 94304                )
                                           )
STRAUB CLINIC & HOSPITAL                   )
888 So King Street                         )
Honolulu, Hawaii 96813                     )
                                           )
THE REGENTS OF THE UNIVERSITY OF           )
CALIFORNIA d/b/a UNIVERSITY OF CALIFORNIA  )
DAVIS MEDICAL CENTER                       )
2315 Stockton Boulevard                    )
Sacramento, California 95817               )
                                           )
THE REGENTS OF THE UNIVERSITY OF           )
CALIFORNIA d/b/a UNIVERSITY OF CALIFORNIA  )
IRVINE MEDICAL CENTER                      )
101 City Drive South                       )
Orange, California 92868                   )
                                           )
WASHINGTON TOWNSHIP HEALTH CARE            )
DISTRICT d/b/a WASHINGTON HOSPITAL         )
2000 Mowry Avenue                          )
Fremont, California 94538                  )
                                           )
WATSONVILLE HOSPITAL CORPORATION d/b/a     )
WATSONVILLE COMMUNITY HOSPITAL             )
85 Nielson Street                          )
Watsonville, California 95076              )
                                           )
                    Plaintiffs,            )
                                           )
                    v.                     )
                                           )
XAVIER BECERRA, Secretary,                 )
Department of Health and Human Services    )
200 Independence Avenue S.W.               )
Washington, D.C. 20201,                    )
                                           )
                    Defendant.             )
                                           )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE
## <u>RELIEF IN THE NATURE OF MANDAMUS</u>

### NATURE OF ACTION

1.     This is an action for an order under the Administrative Procedure Act, 5 U.S.C. § 706(1), compelling Defendant, the Secretary of the Department of Health and Human Services, to perform agency action that has been unlawfully withheld and unreasonably denied.

2.     In 2010, the Defendant's agency issued a binding acquiescence ruling, called CMS Ruling 1498-R, as well as a rule adopted after notice and comment further reflecting that acquiescence.  The agency acquiesced in a 2008 decision of this Court finding systemic errors and omissions in the agency's calculation of a payment formula variable relating to hospitals, like the plaintiffs, that treat a disproportionate share of low-income patients.  *See Baystate Med. Ctr. v. Leavitt*, 545 F. Supp. 2d 20 (D.D.C.), *amended in part*, 587 F. Supp. 2d 37 (D.D.C. 2008), *judgment entered*, 587 F. Supp. 2d 44 (D.D.C. 2008).  The Ruling required the agency's administrative review board to remand all pending administrative appeals challenging that calculation, including appeals brought by the plaintiff hospitals, to the agency's payment contractors for determinations of additional payment amounts owed (but still now not paid) to the appealing hospitals for services furnished to low-income patients more than seventeen years ago, in 2005 and earlier.

3.     The agency's contractors have not performed the revised determinations required under the Ruling and the rule and have not paid the plaintiff hospitals any of the additional amounts due them for the periods at issue.  That failure to act in the more than fourteen years since the *Baystate* decision and twelve years since the agency issued the purported acquiescence violates the agency's duty to complete the required payment redeterminations within a reasonable timeframe.  While the agency takes the position that an agency hold on payment determinations

it purportedly issued to comply with *Azar v. Allina Health Services*, 139 S. Ct. 1804 (2019) ("*Allina II*") prevents relief here, that hold is invalid. Among other reasons, it should have no bearing on the pre-2004 cost years at issue here in light of the binding decision of the Court of Appeals in *Northeast Hospital Corporation v. Sebelius*, 657 F.3d 1 (D.C. Cir. 2011), and the agency's prior acquiescence in that decision for periods prior to 2004. Accordingly, this Court should enter an order compelling the payment actions that have been unreasonably delayed and unlawfully withheld. *See* 5 U.S.C. § 706(1).

## PARTIES

4.     The plaintiff hospitals in this action and hospital fiscal years at issue are as follows:

(1)     Alameda County Medical Center d/b/a Highland Hospital, Provider No. 05-0320, Fiscal Years ending in June 30, 1992, June 30, 1993, June 30, 1994, June 30, 1996, June 30, 1998, June 30, 1999, and June 30, 2000;

(2)     Community Hospital of the Monterey Peninsula, Provider No. 05-0145, Fiscal Years ending in December 31, 2000, December 31, 2001, and December 31, 2002;

(3)     Contra Costa Health Services d/b/a Contra Costa Regional Medical Center, Provider No. 05-0276, Fiscal Years ending in June 30, 2000 and June 30, 2002;

(4)     County of San Joaquin d/b/a San Joaquin General Hospital, Provider No. 05-0167, Fiscal Years ending in June 30, 1993, June 30, 1994, June 30, 1995, June 30, 1996, June 30, 1997, June 30, 1998, June 30, 1999, June 30, 2001, June 30, 2002, June 30, 2003, June 30, 2004, and June 30, 2005;

(5)     Dignity Health d/b/a Bakersfield Memorial Hospital, Provider No. 05-0036, Fiscal Years ending in June 30, 2001 and June 30, 2002;

(6)     Dignity Health d/b/a California Hospital Medical Center - Los Angeles, Provider No. 05-0149, Fiscal Years ending in September 30, 1996, December 31, 2001, December 31, 2002, December 31, 2003, and December 31, 2004;

(7)     Dignity Health d/b/a Chandler Regional Medical Center, Provider No. 03-0036, Fiscal Years ending in June 30, 2004 and June 30, 2005;

(8)     Dignity Health d/b/a Community Hospital of San Bernardino, Provider No. 05-0089, Fiscal Years ending in June 30, 2003, June 30, 2004, and June 30, 2005;

(9)     Dignity Health d/b/a Dominican Hospital, Provider No. 05-0242, Fiscal Years ending in June 30, 1993, June 30, 1994, June 30, 1995, June 30, 1996, June 30,

1997, June 30, 1998, June 30, 1999, June 30, 2000, June 30, 2001, June 30, 2003, June 30, 2004, and June 30, 2005;

(10)     Dignity Health d/b/a Glendale Memorial Hospital and Health Center, Provider No. 05-0058, Fiscal Years ending in September 30, 1996, September 30, 1998, November 30, 1998, June 30, 1999, June 30, 2000, December 31, 2001, June 30, 2002, June 30, 2003, and June 30, 2004;

(11)     Dignity Health d/b/a Marian Regional Medical Center, Provider No. 05-0107, Fiscal Years ending in April 23, 1997, June 30, 2000, June 30, 2001, June 30, 2004, and June 30, 2005;

(12)     Dignity Health d/b/a Mercy General Hospital, Provider No. 05-0017, Fiscal Years ending in March 31, 1996, March 31, 1997, March 31, 1998, March 31, 1999, March 31, 2000, March 31, 2001, March 31, 2002, and March 31, 2004;

(13)     Dignity Health d/b/a Mercy Hospital, Provider No. 05-0295, Fiscal Years ending in June 30, 2000, June 30, 2001, September 29, 2001, June 30, 2002, June 30, 2003, June 30, 2004, and June 30, 2005;

(14)     Dignity Health d/b/a Mercy Hospital and Health System, Provider No. 05-0117, Fiscal Years ending in December 31, 1996, June 30, 2001, and June 30, 2002;

(15)     Dignity Health d/b/a Mercy Medical Center, Provider No. 05-0444, Fiscal Years ending in June 30, 1994, June 30, 2001, June 30, 2002, June 30, 2004, and June 30, 2005;

(16)     Dignity Health d/b/a Mercy Medical Center Redding, Provider No. 05-0280, Fiscal Years ending in June 30, 1998, June 30, 1999, June 30, 2000, June 30, 2001, June 30, 2002, June 30, 2004, and June 30, 2005;

(17)     Dignity Health d/b/a Mercy San Juan Medical Center, Provider No. 05-0516, Fiscal Years ending in March 31, 1997, March 31, 1998, March 31, 1999, March 31, 2003, and March 31, 2005;

(18)     Dignity Health d/b/a Methodist Hospital of Sacramento, Provider No. 05-0590, Fiscal Years ending in December 31, 1999, December 31, 2000, December 31, 2001, December 31, 2002, December 31, 2003, and December 31, 2004;

(19)     Dignity Health d/b/a Northridge Hospital Medical Center, Provider No. 05-0116, Fiscal Years ending in June 30, 1996, June 30, 1997, June 30, 1998, November 30, 1998, June 30, 2000, June 30, 2001, and June 30, 2003;

(20)     Dignity Health d/b/a Northridge Hospital Medical Center - Sherman, Provider No. 05-0299, Fiscal Years ending in March 31, 1996, November 30, 1998, December 31, 2001, December 31, 2002, and November 17, 2004;

(21)   Dignity Health d/b/a St. Bernardine Medical Center, Provider No. 05-0129, Fiscal Year ending in June 30, 2005;

(22)   Dignity Health d/b/a St. Elizabeth Community Hospital, Provider No. 05-0042, Fiscal Year ending in June 30, 2001;

(23)   Dignity Health d/b/a St. Johns Regional Health Center, Provider No. 05-0082, Fiscal Years ending in June 30, 2000, June 30, 2001, June 30, 2002, June 30, 2003, and June 30, 2005;

(24)   Dignity Health d/b/a St. Joseph's Hospital and Medical Center, Provider No. 03-0024, Fiscal Year ending in June 30, 2004;

(25)   Dignity Health d/b/a St. Joseph's Medical Center of Stockton, Provider No. 05-0084, Fiscal Years ending in December 31, 1996, June 30, 2003, and June 30, 2004;

(26)   Dignity Health d/b/a St. Mary Medical Center, Provider No. 05-0191, Fiscal Years ending in June 30, 2000, December 31, 2001, June 30, 2002, and June 30, 2003;

(27)   Dignity Health d/b/a St. Mary's Medical Center, Provider No. 05-0457, Fiscal Years ending in June 30, 1993, June 30, 1996, June 30, 1997, June 30, 1998, June 30, 1999, December 31, 2001, June 30, 2003, and June 30, 2004;

(28)   Dignity Health d/b/a St. Rose Dominican Hospital, Rose De Lima Campus, Provider No. 29-0012, Fiscal Years ending in June 30, 2003 and June 30, 2004;

(29)   Dignity Health d/b/a St. Rose Dominican Hospital, Siena Campus, Provider No. 29-0045, Fiscal Year ending in June 30, 2005;

(30)   Dignity Health d/b/a Woodland Memorial Hospital, Provider No. 05-0127, Fiscal Years ending in September 30, 2001, December 31, 2001, September 30, 2002, September 30, 2003, and September 30, 2004;

(31)   El Camino Hospital, Provider No. 05-0308, Fiscal Years ending in June 26, 1999, June 24, 2000, June 22, 2002, June 30, 2004, and June 30, 2005;

(32)   Enloe Medical Center, Provider No. 05-0039, Fiscal Years ending in June 30, 1999, June 30, 2000, June 30, 2002, June 30, 2003, June 30, 2004, and June 30, 2005;

(33)   NorthBay Healthcare Group d/b/a NorthBay Medical Center, Provider No. 05-0367, Fiscal Years ending in December 31, 1988, December 31, 1989, December 31, 1991, December 31, 1992, December 31, 1993, December 31, 1994, December 31, 1995, December 31, 1996, December 31, 1997, December 31, 1998, December 31, 1999, December 31, 2000, December 31, 2001, December 31, 2003, and December 31, 2004;

(34)   NorthBay Healthcare Group d/b/a VacaValley Hospital, Provider No. 05-0680, Fiscal Years ending in December 31, 2001 and December 31, 2004;

(35)   Pali Momi Medical Center, Provider No. 12-0026, Fiscal Years ending in June 30, 2003, June 30, 2004, and June 30, 2005;

(36)   Prime Healthcare Services - Reno LLC d/b/a Saint Mary's Regional Medical Center, Provider No. 29-0009, Fiscal Years ending in December 31, 2003 and December 31, 2004;

(37)   Sonoma Valley Health Care District d/b/a Sonoma Valley Hospital, Provider No. 05-0090, Fiscal Years ending in June 30, 2002, June 30, 2004, and June 30, 2005;

(38)   St. Mary's Duluth Clinic Health System d/b/a Essentia Health St. Mary's Medical Center, Provider No. 24-0002, Fiscal Year ending in June 30, 2005;

(39)   St. Mary's Duluth Clinic Health System d/b/a SMDC Medical Center, Provider No. 24-0019, Fiscal Year ending in June 30, 2005;

(40)   Stanford Hospital & Clinics d/b/a Stanford Health Care, Provider No. 05-0441, Fiscal Years ending in August 31, 1992, August 31, 1994, August 31, 1995, August 31, 1996, August 31, 1997, October 31, 1997, August 31, 2000, August 31, 2001, and August 31, 2002;

(41)   Straub Clinic and Hospital, Provider No. 12-0022, Fiscal Years ending in January 17, 1997, December 31, 1997, December 31, 1998, December 22, 2001, June 30, 2003, June 30, 2004, and June 30, 2005;

(42)   The Regents of the University of California d/b/a University of California Davis Medical Center, Provider No. 05-0599, Fiscal Years ending in June 30, 1992, June 30, 1996, June 30, 1998, June 30, 1999, June 30, 2000, June 30, 2001, and June 30, 2003;

(43)   The Regents of the University of California d/b/a University of California Irvine Medical Center, Provider No. 05-0348, Fiscal Years ending in June 30, 1999 and June 30, 2001;

(44)   Washington Township Health Care District d/b/a Washington Hospital, Provider No. 05-0195, Fiscal Years ending in June 30, 1992, June 30, 1993, June 30, 1994, June 30, 1995, June 30, 1997, June 30, 1998, June 30, 1999, June 30, 2000, June 30, 2001, June 30, 2002, June 30, 2004, and June 30, 2005; and

(45)   Watsonville Hospital Corporation d/b/a Watsonville Community Hospital, Provider No. 05-0194, Fiscal Years ending in June 30, 1991, June 30, 1992, June 30, 1994, June 30, 1995, June 30, 1996, June 30, 1997, and August 31, 1998.

5.     Defendant is Xavier Becerra, the Secretary of the Department of Health and Human Services, the federal agency that administers the Medicare program.  The Secretary is sued only

in his official capacity.  References to the Secretary herein are meant to refer to him, to his subordinates, and to his official predecessors or successors as the context requires.

6.    The Centers for Medicare and Medicaid Services ("CMS") is the component of the Secretary's agency with responsibility for day-to-day operation and administration of the Medicare program.  CMS was formerly known as the Health Care Financing Administration. References to CMS herein are meant to refer to the agency and its predecessors.

**JURISDICTION AND VENUE**

7.    This action arises under the Medicare Act, 42 U.S.C. § 1395 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq*.

8.    Jurisdiction is proper under 28 U.S.C. § 1361 and 28 U.S.C. § 1331.

9.    Venue is proper in this judicial district under 28 U.S.C. § 1391(e)(1).

**STATUTORY AND REGULATORY BACKGROUND**

**Medicare DSH Payment Adjustment and the SSI Fraction**

10.    After the close of each fiscal year, Medicare-participating hospitals are required to file "cost reports" with Medicare Administrative Contractors designated by the agency.  42 C.F.R. §§ 413.20, 413.24.  The Medicare Administrative Contractor analyzes a hospital's cost report and issues a year-end determination, called a Notice of Program Reimbursement ("NPR"), as to the amount of Medicare program reimbursement due the hospital for services furnished to Medicare patients during the fiscal year covered by the cost report.  *See id.* § 405.1803.

11.    Plaintiffs are hospitals that treat low-income patients and receive Medicare disproportionate share hospital ("DSH") payment adjustments for the higher costs incurred by such hospitals.  *See* 42 U.S.C. § 1395ww(d)(5)(F); 42 C.F.R. § 412.106.  The amount of the adjustment owed to a qualifying hospital is determined by two fractions one of which, pertinent here, is referred to in this Complaint as the "SSI fraction."

11

12.     As defined by statute, the numerator of the SSI fraction for a "cost reporting period of a hospital" consists of "such hospital's patient days for such period" for patients who were entitled to benefits under both Part A of the Medicare Act and the federal supplemental security income ("SSI") program. *See* 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I). The denominator of the SSI fraction consists of "such hospital's patient days for such fiscal year" for patients who were entitled to benefits under Part A of the Medicare Act. *Id.*

13.     In the original rulemaking implementing the DSH statute, the agency decided to calculate the SSI fraction by default using patient days associated with patients who are discharged in a federal fiscal year ending on September 30, which may differ from a hospital's own cost reporting period. 51 Fed. Reg. 16,772, 16,777 (May 6, 1986) (interim final rule); 51 Fed. Reg. 31,454, 31,459-60 (Sept. 3, 1986) (final rule). For example, some hospitals have cost reporting periods that end on June 30, or December 30, or at some other point during a calendar year other than on September 30, the end of the federal fiscal year. The agency opted to calculate the SSI fraction on a federal fiscal year basis for the administrative convenience of the agency. 51 Fed. Reg. at 16,777. The agency also recognized, however, that the statute grants hospitals the right to have the calculation performed for the patient days in the hospital's own cost reporting period, when a hospital uses a fiscal year other than the federal fiscal year. *Id.* Thus, the default approach is subject to the proviso, under the agency's rule, that a hospital may elect for any given cost reporting period to have the SSI fraction determined for that period. *Id.*; *see also* 42 C.F.R. § 412.106(b)(2)-(3). Further, the Medicare rules provide that once a hospital elects to have the SSI fraction calculated on the basis of its own cost reporting period, that election is binding for that cost reporting period. *See* 42 C.F.R. § 412.106(b)(3) (stating that a hospital may request that "CMS use its cost reporting period instead of the Federal fiscal year" for the SSI fraction

12

calculation, and that "the resulting percentage becomes the hospital's official Medicare Part

A/SSI percentage for that period"); 51 Fed. Reg. at 31,459 (stating that if a hospital requests to

have the SSI fraction calculated on the basis of patient days in a given cost reporting period, the

resulting SSI percentage is binding "whether the result is higher or lower than the percentage

computed based on the Federal fiscal year"); 70 Fed. Reg. 47,278, 47,439-40 (Aug. 12, 2005)

(similar).

### Litigation Regarding Errors in SSI Fraction and Subsequent Agency Delay

14.    The agency's determination of the SSI fraction has been broadly contested for

decades in litigation challenging both the processes and data used by the agency to determine the

numerator of the SSI fraction, *see Baystate Med. Ctr.*, 545 F. Supp. 2d at 20, and the categories

of Medicare patients that should be included, *see e.g., Northeast Hosp.*, 657 F.3d at 13-17 (finding

application of the 2004 rule on Part C days to pre-2004 cost years impermissibly retroactive);

*Allina II*, 863 F.3d 937, 945 (D.C. Cir. 2017) (holding that the agency must undertake notice-and-

comment rulemaking before the payment standard can take effect).  Following this Court's 2008

decision in *Baystate* finding several errors and omissions in the agency's calculation of the

numerator of the SSI fraction, which tended to deflate the numerator of the fraction and thus to

reduce the DSH payments made to hospitals, the agency issued an acquiescence ruling in April

2010, referred to as CMS Ruling 1498-R.[1]

15.    CMS Ruling 1498-R addressed pending administrative appeals challenging the

determination of the numerator of the SSI fraction.  The Ruling asserts that the recalculated SSI

fraction included corrections required under this Court's ruling in *Baystate*.  The Ruling also

---

[1] *Available at* https://www.cms.gov/regulations-and-guidance/guidance/rulings/downloads/
cms1498r.pdf.

directed the agency's administrative tribunal that adjudicates Medicare payment disputes, the Provider Reimbursement Review Board ("PRRB" or "Board"), to remand all pending hospital appeals challenging alleged errors and omissions in the agency's determination of the SSI fraction numerator to the agency's Medicare Administrative Contractors.  The Ruling further directs the contractors to apply the revised SSI fractions calculated by the agency on remand and to pay hospitals the additional amounts due as a result of those revisions.

16.     Following the issuance of CMS Ruling 1498-R and notice-and-comment rulemaking on its acquiescence, in August 2010, the agency adopted a final rule with an effective date of October 1, 2010, revising the process the agency uses to calculate the SSI fractions and thereby purporting to correct the errors identified by the Court in *Baystate*.  75 Fed. Reg. 50,042, 50,277 (Aug. 16, 2010) (agency acknowledgment that *Baystate* decision binding because not appealed by agency and that agency therefore "implemented the court's decision" with its revised SSI fraction calculation process).

17.     Neither CMS Ruling 1498-R nor the 2010 final rule expressly addressed the required timeframe in which the agency's contractors were required to apply the revised SSI fractions and make additional payments due the hospitals on remand.  Nor did they address whether the SSI fractions should be calculated on a hospital cost reporting period basis instead of the federal fiscal year when hospitals have requested or previously received recalculation of the SSI fractions based on the patient days in particular hospital cost reporting periods instead of the federal fiscal year.

18.     Nearly seven years later, on January 27, 2017, the agency issued a Medicare program transmittal relating to the remands under CMS Ruling 1498-R.  Change Request 9896,

Transmittal No. 1776 (Jan. 27, 2017).[2]  Notwithstanding the DSH regulation's plain language that the election of SSI fractions based on their cost reporting periods is binding, 42 C.F.R. § 412.106(b)(3), that transmittal states that all requests made prior to remand under CMS Ruling 1498-R for SSI fractions to be calculated based on hospitals' own cost reporting periods, for periods subject to remand under CMS Ruling 1498-R, are no longer valid.  The transmittal asserts that the agency's payment contractors must first issue hospitals revised payment determinations applying SSI fractions calculated on a federal fiscal year basis.  Thereafter, hospitals may submit another written request for recalculations of the SSI fractions based on the hospitals' specific cost reporting periods.  But the transmittal imposes no requirement on the payment contractors to process such further requests in any particular timeframe or even within a reasonable period after receipt of those further requests.

19.    The approach dictated by the January 2017 transmittal would have reduced the revised DSH payment determinations on remand for hospitals that benefit from recalculation of the SSI fractions based on their cost reporting periods.  In some instances, the calculations required by the transmittal would have produced amounts due to the Medicare program by hospitals, whereas calculations of the SSI fractions for the hospitals' own cost reporting periods would have yielded amounts due hospitals by the Medicare program.

20.    In light of this predicament, on September 6, 2019, the agency issued another Medicare program transmittal.  Change Request 10484, Transmittal No. 2357 (Sept. 6, 2019).[3] This transmittal provided hospitals a one-time window to request that the Medicare contractors

---

[2] *Available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/2017 downloads/R1776OTN.pdf.

[3] *Available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/ 2019Downloads/R2357OTN.pdf.

not issue them NPRs on remand applying SSI fractions based on the federal fiscal year, *see id.*, so that they could instead receive NPRs applying SSI fractions based on their cost reporting periods.

<u>**Additional Delay Following *Allina II***</u>

21.     On April 3, 2020, the agency issued Technical Direction Letter ("TDL") 200340 (the "Instruction"), instructing Medicare contractors "to halt an [sic] effort to settle any cost reports where [Part C] plan days shall or shall not be counted" in the calculation of providers' SSI ratios for purposes of their DSH adjustment for periods prior to October 1, 2013.  TDL 200340 at 1 (Apr. 3, 2020), *Allina II*, 1:14-cv-01415-TJK (D.D.C. Sept. 25, 2020), ECF No. 63-1.  CMS explained that, because it "has not yet completed the process of notice-and-comment rulemaking to establish a policy governing the treatment of [Part C] days prior to October 1, 2013" in light of *Allina II*, Medicare contractors "shall not take any further action which would require [Part C] days to be counted (or not counted) in the SSI ratio . . . until expressly instructed by CMS."  *Id.* at 3.

22.     Consistent with this earlier Instruction, on August 17, 2020, the agency issued another ruling, CMS Ruling 1739-R.[4]  The agency issued CMS Ruling 1739-R soon after the agency published in the Federal Register a notice of proposed rulemaking announcing a proposal to adopt retroactively for periods prior to October 1, 2013 the same DSH payment standard change as that previously adopted in the publications vacated in *Allina Health Services v. Sebelius*, 746 F.3d 1102, 1106 (D.C. Cir. 2014) ("*Allina I*"), and *Allina II*.  85 Fed. Reg. 47,723, 47,724-25 (Aug. 6, 2020).  As with the Instruction, the agency claimed to issue both the proposed rule and

---

[4] *Available at* https://www.cms.gov/files/document/cms-1739-r.pdf.

CMS Ruling 1739-R in response to the Supreme Court's decision in *Allina II*.  85 Fed. Reg. at 47,724-25; CMS Ruling 1739-R at 1.

23.     CMS Ruling 1739-R states that it concerns claims relating to the "Part C day DSH issue" underlying the *Allina* litigation.  *See* CMS Ruling 1739-R at 7.  More specifically, that litigation concerned the change in payment standard involving Part C days in the DSH calculation that CMS attempted to adopt first in a 2004 rule, which was vacated in the course of the litigation, and then again in a further 2013 rule, which is the subject of ongoing litigation.  *See Allina I*, 746 F.3d at 1105; *Allina II*, 139 S. Ct. at 1810.  CMS Ruling 1739-R specifically states its purpose "to resolve in an orderly manner pending administrative appeals of the Part C days" issue in both the "SSI and Medicaid fractions."  CMS Ruling 1739-R at 7-8; *see also id.* at 2 (addressing "Challenges to the Treatment of Part C Days in the SSI and Medicaid Fractions").  Notwithstanding the agency's prior acquiescence in *Northeast Hospital*, 657 F.3d 1, *see* TDL 12391, 06-06-12 (June 12, 2012), it also provided that "CMS and the Medicare contractors will not calculate the SSI fractions, Medicaid fractions, or DSH payment amounts that depend upon them, necessary for the DSH payment adjustment for discharges prior to October 1, 2013, until a new rule is promulgated . . . that addresses the treatment of [Part C] days."  CMS Ruling 1739-R at 8.

24.     CMS Ruling 1739-R further stated that the agency's proposed rule "eliminates any actual case or controversy regarding the hospital's previously calculated SSI and Medicaid fractions and its DSH payment adjustment and thereby renders moot each properly pending claim in a DSH appeal involving the issue resolved by the Supreme Court in *Allina* [*II*]."  *Id*.  But the agency has not even collected the data that would be required to implement the changed Part C payment standard for the cost years at issue here, which are all pre-2004.  It only belatedly

requested such data for periods back to federal fiscal year 2006.  *See* Change Request 6329, Transmittal No. 1695 (Mar. 6, 2009) (requiring hospitals that received DSH payments in fiscal year 2006 to submit claims for Part C days for discharges on or after October 1, 2005);[5] Change Request 5647, Transmittal No. 1311 (July 20, 2007) (directing hospitals to do the same with respect to fiscal year 2007 and Part C claims with discharge dates on or after October 1, 2006);[6] *Northeast Hosp.*, 657 F.3d at 15 (stating that Change Request 5647 "directed *all* hospitals to begin submitting 'no-pay' bills for [Part C] patients").  Thus, CMS's retroactive application of the payment standard in the forthcoming Part C rule would necessarily be limited to fiscal year 2006 onward, which is outside the cost years at issue here.  Indeed, CMS had previously acquiesced to the *Northeast Hospital* decision by settling hundreds of cases and issued a transmittal instructing its contractors to include Part C days in the numerator of the Medicaid fraction for discharges prior to October 1, 2004.  *See* TDL 12391, 06-06-12 (instructing that, "[i]n light of the Circuit Court's decision" in *Northeast Hospital*, Medicaid eligible Part C days "must be included in the numerator of the Medicaid fraction").  CMS Ruling 1739-R and the Instruction, therefore, should have no bearing on the cost years at issue in this Complaint because the agency has acquiesced to the *Northeast Hospital* decision for fiscal year ends before 2004 (those at issue here) and the data needed to implement any new Part C payment standard is limited to fiscal year ends 2006 onward (after those at issue here).

### FACTUAL BACKGROUND

25.     Each of the plaintiff hospitals timely filed an appeal to the PRRB from a final DSH payment determination for the cost reporting periods at issue, as listed in paragraph 4 of this

---

[5] *Available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/ downloads/R1695CP.pdf.
[6] *Available at* https://www.cms.gov/regulations-and-guidance/guidance/transmittals/downloads/ r1311cp.pdf.

Complaint.  In those appeals, the plaintiff hospitals sought to correct the now-undisputed errors and omissions in the agency's determination of the numerator of the SSI fractions.

26.     The PRRB remanded the plaintiff hospitals' appeals for the cost reporting periods at issue under CMS Ruling 1498-R.  These remand orders directed the Medicare contractors responsible for the plaintiff hospitals' cost reports, National Government Services and Noridian Healthcare Solutions, to apply the revised SSI fractions calculated by the agency on remand and to pay the plaintiff hospitals the additional amounts due as a result of those revisions.  The Board's remand orders were issued as early as June 4, 2012, in some cases and not later than April 7, 2015, in others.

27.     Many of the plaintiff hospitals also requested to have the SSI fractions for the cost reporting periods at issue calculated based on the patient days occurring in the hospitals' own cost reporting periods.  The plaintiff hospitals that seek recalculation of the SSI fractions on a cost reporting period basis, and the periods for which such requests were made, are:

(1)     Alameda County Medical Center d/b/a Highland Hospital, Provider No. 05-0320, Fiscal Years ending in June 30, 1992, June 30, 1993, June 30, 1996, and June 30, 1998;

(2)     Community Hospital of the Monterey Peninsula, Provider No. 05-0145, Fiscal Years ending in December 31, 2000 and December 31, 2001;

(3)     Contra Costa Health Services d/b/a Contra Costa Regional Medical Center, Provider No. 05-0276, Fiscal Year ending in June 30, 2000;

(4)     County of San Joaquin d/b/a San Joaquin General Hospital, Provider No. 05-0167, Fiscal Years ending in June 30, 1993, June 30, 1994, June 30, 1996, June 30, 1997, June 30, 1999, June 30, 2002, and June 30, 2005;

(5)     Dignity Health d/b/a Bakersfield Memorial Hospital, Provider No. 05-0036, Fiscal Years ending in June 30, 2001 and June 30, 2002;

(6)     Dignity Health d/b/a California Hospital Medical Center - Los Angeles, Provider No. 05-0149, Fiscal Years ending in December 31, 2001, December, 31, 2003, and December 31, 2004;

(7)     Dignity Health d/b/a Chandler Regional Medical Center, Provider No. 03-0036, Fiscal Year ending in June 30, 2004;

(8)     Dignity Health d/b/a Community Hospital of San Bernardino, Provider No. 05-0089, Fiscal Years ending in June 30, 2003 and June 30, 2005;

(9)     Dignity Health d/b/a Dominican Hospital, Provider No. 05-0242, Fiscal Years ending in June 30, 1993, June 30, 1994, June 30, 1996, June 30, 1997, June 30, 1998, June 30, 1999, June 30, 2001, June 30, 2004, and June 30, 2005;

(10)    Dignity Health d/b/a Glendale Memorial Hospital and Health Center, Provider No. 05-0058, Fiscal Years ending in November 30, 1998, December 31, 2001, and June 30, 2003;

(11)    Dignity Health d/b/a Marian Regional Medical Center, Provider No. 05-0107, Fiscal Years ending in June 30, 2000 and June 30, 2005;

(12)    Dignity Health d/b/a Mercy General Hospital, Provider No. 05-0017, Fiscal Years ending in March 31, 1996, March 31, 1997, March 31, 1998, March 31, 1999, March 31, 2001, and March 31, 2002;

(13)    Dignity Health d/b/a Mercy Hospital, Provider No. 05-0295, Fiscal Years ending in June 30, 2000, June 30, 2002, and June 30, 2004;

(14)    Dignity Health d/b/a Mercy Hospital and Health System, Provider No. 05-0117, Fiscal Year ending in December 31, 1996;

(15)    Dignity Health d/b/a Mercy Medical Center, Provider No. 05-0444, Fiscal Years ending in June 30, 1994, June 30, 2001, and June 30, 2004;

(16)    Dignity Health d/b/a Mercy Medical Center Redding, Provider No. 05-0280, Fiscal Years ending in June 30, 2001 and June 30, 2005;

(17)    Dignity Health d/b/a Mercy San Juan Medical Center, Provider No. 05-0516, Fiscal Years ending in March 31, 1997, March 31, 1998, March 31, 1999, and March 31, 2005;

(18)    Dignity Health d/b/a Methodist Hospital of Sacramento, Provider No. 05-0590, Fiscal Years ending in December 31, 2000 and December 31, 2003;

(19)    Dignity Health d/b/a Northridge Hospital Medical Center, Provider No. 05-0116, Fiscal Years ending in June 30, 1997, June 30, 1998, November 30, 1998, and June 30, 2003;

(20)    Dignity Health d/b/a Northridge Hospital Medical Center - Sherman, Provider No. 05-0299, Fiscal Years ending in March 31, 1996, November 30, 1998, December 31, 2001, and December 31, 2002;

(21)   Dignity Health d/b/a St. Elizabeth Community Hospital, Provider No. 05-0042, Fiscal Year ending in June 30, 2001;

(22)   Dignity Health d/b/a St. Johns Regional Health Center, Provider No. 05-0082, Fiscal Years ending in June 30, 2001 and June 30, 2005;

(23)   Dignity Health d/b/a St. Joseph's Hospital and Medical Center, Provider No. 03-0024, Fiscal Year ending in June 30, 2004;

(24)   Dignity Health d/b/a St. Joseph's Medical Center of Stockton, Provider No. 05-0084, Fiscal Years ending in December 31, 1996 and June 30, 2004;

(25)   Dignity Health d/b/a St. Mary Medical Center, Provider No. 05-0191, Fiscal Years ending in December 31, 2001, June 30, 2002, and June 30, 2003;

(26)   Dignity Health d/b/a St. Mary's Medical Center, Provider No. 05-0457, Fiscal Years ending in June 30, 1993, June 30, 1996, June 30, 1997, June 30, 1998, June 30, 1999, December 31, 2001, and June 30, 2003;

(27)   Dignity Health d/b/a St. Rose Dominican Hospital, Rose De Lima Campus, Provider No. 29-0012, Fiscal Year ending in June 30, 2003;

(28)   Dignity Health d/b/a St. Rose Dominican Hospital, Siena Campus, Provider No. 29-0045, Fiscal Year ending in June 30, 2005;

(29)   Dignity Health d/b/a Woodland Memorial Hospital, Provider No. 05-0127, Fiscal Year ending in September 30, 2002;

(30)   El Camino Hospital, Provider No. 05-0308, Fiscal Years ending in June 26, 1999, June 22, 2002, and June 30, 2004;

(31)   NorthBay Healthcare Group d/b/a NorthBay Medical Center, Provider No. 05-0367, Fiscal Years ending in December 31, 1989, December 31, 1993, December 31, 1994, December 31, 1998, December 31, 1999, December 31, 2001, and December 31, 2004;

(32)   NorthBay Healthcare Group d/b/a VacaValley Hospital, Provider No. 05-0680, Fiscal Years ending in December 31, 2001 and December 31, 2004;

(33)   Pali Momi Medical Center, Provider No. 12-0026, Fiscal Year ending in June 30, 2004;

(34)   Prime Healthcare Services - Reno LLC d/b/a Saint Mary's Regional Medical Center, Provider No. 29-0009, Fiscal Year ending in December 31, 2003;

(35)   Sonoma Valley Health Care District d/b/a Sonoma Valley Hospital, Provider No. 05-0090, Fiscal Years ending in June 30, 2002 and June 30, 2004;

(36)     St. Mary's Duluth Clinic Health System d/b/a Essentia Health St. Mary's Medical Center, Provider No. 24-0002, Fiscal Year ending in June 30, 2005;

(37)     St. Mary's Duluth Clinic Health System d/b/a SMDC Medical Center, Provider No. 24-0019, Fiscal Year ending in June 30, 2005;

(38)     Stanford Hospital & Clinics d/b/a Stanford Health Care, Provider No. 05-0441, Fiscal Years ending in August 31, 1992, August 31, 1994, August 31, 1995, August 31, 1996, August 31, 1997, October 31, 1997, August 31, 2000, August 31, 2001, and August 31, 2002;

(39)     Straub Clinic and Hospital, Provider No. 12-0022, Fiscal Years ending in January 17, 1997, December 31, 1997, December 31, 1998, June 30, 2003, and June 30, 2004;

(40)     The Regents of the University of California d/b/a University of California Davis Medical Center, Provider No. 05-0599, Fiscal Years ending in June 30, 1996 and June 30, 2000;

(41)     Washington Township Health Care District d/b/a Washington Hospital, Provider No. 05-0195, Fiscal Years ending in June 30, 1992, June 30, 1993, June 30, 1994, June 30, 1995, June 30, 1997, June 30, 1998, June 30, 1999, June 30, 2001, June 30, 2002, June 30, 2004; and

(42)     Watsonville Hospital Corporation d/b/a Watsonville Community Hospital, Provider No. 05-0194, Fiscal Years ending in June 30, 1992, June 30, 1994, June 30, 1996, June 30, 1997, and August 31, 1998.

28.     On September 30 and October 1, 2019, certain plaintiff hospitals responded to CMS's September 6, 2019, transmittal by submitting requests that the Medicare contractors realign their SSI fractions based on their own cost reporting periods as opposed to the federal fiscal year.  Furthermore, on October 2, 2019, other plaintiff hospitals that do not seek realignment of their SSI fractions also submitted a letter to the agency's contractors requesting that their long-delayed revised NPRs be issued promptly.  The agency has not taken any action in response to any of these requests.

29.     To date, the agency's contractors have taken no action to apply the revised SSI fractions calculated by CMS under CMS Ruling 1498-R for any of the cost reporting periods at issue and have made no payments of additional DSH amounts due the plaintiff hospitals as result

of those revisions of the SSI fractions despite repeated requests from the plaintiff hospitals for such determinations over many years. The agency's unreasonable delay has cost the plaintiff hospitals tens of millions of dollars in funds that should have been paid to them many years ago for the higher costs that they incurred to treat low-income patients more than a decade ago. The plaintiff hospitals have no other avenue of relief available to cause the agency to perform its obligations with respect to the remands under the Ruling in a reasonable time period other than to file this Complaint.

30.     On February 9, 2023, counsel for the plaintiff hospitals provided a draft of this Complaint to Defendant's Office of General Counsel to request their assistance in addressing the claims set forth herein without the need for litigation. On February 22, 2023, the Office responded only that the Instruction directed the agency's contractors not to issue the requested revised payment determinations for cost years ending before October 1, 2013. *See supra* ¶ 21.

## CAUSES OF ACTION

### Count I – Undue Delay in Processing Revised Payment Determinations on Remand

31.     The plaintiff hospitals repeat the allegations in paragraphs 30 of this Complaint as if fully set forth herein.

32.     The APA "requires that an agency 'proceed to conclude a matter presented to it' and that it do so 'within a reasonable time.'" *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992) (quoting 5 U.S.C. § 555(b)). The APA further requires a reviewing court to "'compel agency action unlawfully withheld or unreasonably delayed.'" *Id.* (quoting 5 U.S.C. § 706(1)). Accordingly, courts "designated by statute to review agency actions may play an important role in compelling agency action that has been improperly withheld or unreasonably delayed." *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984) ("*TRAC*").

33.    This Court is authorized by statute to review final decisions of Defendant as to the amount of Medicare program reimbursement due providers of services, like the plaintiff hospitals at issue in this action.  *See* 42 U.S.C. § 1395oo(f)(1).  The Court has jurisdiction over this action and the power to grant relief in the nature of mandamus to compel Defendant to perform a mandatory obligation that has been unlawfully withheld and unreasonably delayed.  *See In re Medicare Reimbursement Litigation*, 414 F.3d 7, 13 (D.C. Cir. 2005) (affirming this Court's mandamus order directing Defendant to perform the agency's obligation to reopen and correct erroneous Medicare payment determinations).

34.    In the many years since the PRRB remanded the plaintiff hospitals' appeals, the agency's contractors have not applied the revised SSI fractions calculated by the agency and have not paid the plaintiff hospitals any additional DSH amounts due as a result of the revisions to the SSI fractions.

35.    The agency's delay in implementing the payment revisions required on remand under CMS Ruling 1498-R violates the APA's requirement to act within a reasonable period, and the plaintiff hospitals have no other avenue of relief available to cause the agency to perform its obligations with respect to the remands under the Ruling in a reasonable timeframe.

36.    This Court also has the jurisdiction to grant the relief requested where, as here, "(1) the plaintiff[s] ha[ve] a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff[s]."  *In re Medicare Reimbursement Litig.*, 414 F.3d at 10 (quoting *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002)).  The plaintiff hospitals have a right to these payment redeterminations, and the agency has a non-discretionary duty to complete such required redeterminations within a reasonable timeframe as required by the agency's own 2010 ruling.  CMS Ruling 1498-R states that once the agency calculates new SSI

24

fractions "the contractor will recalculate the provider's DSH adjustment; issue a revised notice of program reimbursement (revised NPR) for the period at issue, *see* 42 C.F.R. §§ 405.1801(a), 405.1803, 405.1889; and pay the provider any monies deemed owing as a result of such DSH recalculation." CMS Ruling 1498-R at 28. Generally, section 405.1803 of the governing regulation states that, "[u]pon receipt of a provider's cost report, or amended cost report where permitted or required, *the contractor must within a reasonable period of time (as specified in § 405.1835(c)(1))* furnish the provider . . . a written notice reflecting the contractor's final determination of the total amount of reimbursement due the provider." 42 C.F.R. § 405.1803(a) (emphasis added). Section 405.1835(c)(1), in turn, provides that a reasonable period of time is 12 months. *See id.* § 405.1835(c)(1) (stating that "a provider . . . has a right to a Board hearing" if "[a] final contractor determination for the provider's cost reporting period is not issued . . . within 12 months after the date of receipt by the contractor of the provider's perfected cost report or amended cost report"). Furthermore, the plaintiff hospitals have exhausted their efforts to compel the agency to perform this non-discretionary duty and have no other avenue available for seeking relief.

37.     The so-called "*TRAC* factors," which serve "as useful guidance as to whether a delay is 'so egregious as to warrant mandamus,'" also support the relief requested here. *See Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) (identifying the factors and quoting *TRAC*, 750 F.2d at 80). With respect to the "most important factor" of time, *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008), the length of delay here is far from reasonable. While "'[t]here is no *per se* rule as to how long is too long,' a 'reasonable time for agency action is typically counted in weeks or months, not years.'" *In re Public Emps. for Envtl. Resp.*, 957 F.3d 267, 273 (D.C. Cir. 2020); *see also Nader v. FCC*, 520 F.2d 182, 206 (D.C. Cir. 1975) (agreeing

that "nine years should be enough time for any agency to decide almost any issue").  Courts regularly find unreasonable agency delay where the agency fails to act within a few years.  *See, e.g.*, *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (characterizing a "six-year-plus delay" as "nothing less than egregious"); *In re Core Commc'ns, Inc.*, 531 F.3d 849, 850 (D.C. Cir. 2008) (granting relief after an agency's "egregious" seven-year delay).  In addition, "[h]ealth and welfare are indisputably at stake" because "hospitals with 'money tied up in the appeals process' have a difficult time maintaining facilities and procuring supplies."  *Am. Hosp. Ass'n v. Azar*, No. CV 14-851 (JEB), 2018 WL 5723141, at *3 (D.D.C. Nov. 1, 2018).  Notwithstanding any other agency or contractor priorities, the plaintiff hospitals also have substantial interests in receiving the delayed funds, which are critical to their ability to continue to furnish care to their communities, especially in light of the COVID-19 pandemic.  *See id.* ("[T]he 'lengthy payment delays . . . affect hospitals' willingness and ability to provide care,' and therefore prejudice both hospitals and their patients." (citation omitted)).

38.    To the extent that the agency takes the position that the agency's hold on payment determinations now prevents it from providing the relief here, that hold is invalid as arbitrary, capricious, and otherwise contrary to law.

39.    The hold is arbitrary and capricious as applied to cost years at issue here because Defendant does not provide any explanation for treating these cost years differently than other pre-2004 cost years.  Following his loss in the *Northeast Hospital* decision, Defendant settled hundreds of cases addressing the Part C issue, for cost years occurring in 2004 and earlier, over the course of many years by instructing his contractors to include the contested Part C days in the numerator of the Medicaid fraction.  By changing course at this late moment and further delaying the issuance of revised payment determinations for these earlier years to revisit the treatment of

Part C days, the Instruction and CMS Ruling 1739-R have created a situation where similarly-situated parties are treated dissimilarly, which is arbitrary and capricious agency action.  *See Transactive Corp. v. United States*, 91 F.3d 232, 237 (D.C. Cir. 1996) ("A long line of precedent has established that an agency action is arbitrary when the agency offered insufficient reasons for treating similar situations differently.").

40.     Defendant also failed to consider that the agency previously acquiesced to the *Northeast Hospital* decision for periods prior to 2004 by directing the inclusion of Part C days in the numerator of the Medicaid fraction for discharges before October 1, 2004 (i.e., those at issue here) in issuing the hold.  *See supra* ¶¶ 21-22; *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020) (observing that the failure to consider an important factor can "alone" render an agency action arbitrary and capricious); *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 430 (D.C. Cir. 2018) ("An agency's failure to consider an important aspect of the problem is one of the hallmarks of arbitrary and capricious reasoning.").

41.     The hold is also arbitrary and capricious as overbroad because it should have no bearing on the pre-2004 cost years at issue here given the Court of Appeals' decision in *Northeast Hospital*.  *See Nat'l Mining Ass'n v. Babbitt*, 172 F.3d 906, 913 (D.C. Cir. 1999) (concluding that an agency "regulation is both arbitrary and capricious because it is irrationally overbroad" and vacating it as a result).  The agency has necessarily limited the application of the changed Part C payment standard in the SSI fractions to federal fiscal year 2006 onward by only collecting the necessary data from hospitals starting October 1, 2005.  *See supra* ¶ 22; Change Request 6329, Transmittal No. 1695; Change Request 5647, Transmittal No. 1311.  Given that these cost years pre-date federal fiscal year 2006, the requirement under the Instruction and CMS Ruling 1739-R

that Medicare contractors not issue payment determinations affected by the forthcoming Part C final rule should have no impact.

42.     The hold also violates the special notice-and-comment rulemaking provision of the Medicare Act. 42 U.S.C. § 1395hh(a)(2).  This provision prohibits a "rule, requirement, or other statement of policy . . . that establishes or changes a substantive legal standard" governing the payment for services from "tak[ing] effect unless it is promulgated" through notice-and-comment rulemaking.  *Id.*  In *Allina II*, the Supreme Court held that the agency's attempted re-adoption of the 2004 Part C policy change was at least a statement of policy governing payment for services, and therefore was required to undergo notice-and-comment rulemaking before it could take effect.  *Allina II*, 139 S. Ct. at 1810–14.  Neither the Instruction nor CMS Ruling 1739-R underwent notice-and-comment rulemaking before becoming effective.  This is exactly the type of agency action the Medicare Act's special requirements seek to prevent.  *See id.* at 1808 ("As Medicare has grown, so has Congress's interest in ensuring that the public has a chance to be heard before changes are made to its administration.").  By failing to give regulated parties notice and the ability to comment on the Instruction or CMS Ruling 1739-R, the agency has again violated the terms of section 1395hh(a)(2), as interpreted by the Supreme Court in *Allina II*.

43.     The Instruction and the portion of CMS Ruling 1739-R purporting to hold the issuance of all payment determinations for years before 2013 have also been inconsistently applied by the agency, and for that reason is also arbitrary and capricious agency action.  *See Kreis v. Sec'y of Air Force*, 406 F.3d 684, 687 (D.C. Cir. 2005) ("[A]n agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so.").  Upon information and belief, Defendant's agency, through its Medicare contractors, has otherwise issued other revised payment determinations impacting the DSH calculation since the April 2020

issuance of the Instruction and the August 2020 publication of CMS Ruling 1739-R, demonstrating that the agency's contractors are able to, and in fact do, issue final payment determinations impacting DSH.

### Count II – Calculation Of SSI Fractions For Hospital Cost Reporting Periods

44.    The plaintiff hospitals repeat the allegations in paragraphs 30 of this Complaint as if fully set forth herein.

45.    The plaintiff hospitals listed in paragraph 26 requested recalculation of the SSI fractions based on cost reporting periods.

46.    The plaintiff hospitals have a statutory right to SSI fractions calculated based on patient days in the hospital's own cost reporting periods.  In enacting the DSH statute, Congress mandated that the SSI fraction be calculated "with respect to a cost reporting period of a hospital" based on the hospital's patient days "for such period."   42 U.S.C. § 1395ww(d)(5)(F)(vi), (d)(5)(F)(vi)(I).

47.    The agency's own rules provide that hospitals' requests for calculation of the SSI fractions based on cost reporting periods is binding for those cost reporting periods.  *See* 42 C.F.R. § 413.106(b)(3); *see also* 51 Fed. Reg. at 31,459 ("[I]f a hospital has its SSI[ fraction] recomputed based on its own cost reporting period, this percentage will be used for purposes of its disproportionate share adjustment whether the result is higher or lower than the percentage computed based on the Federal fiscal year."); 56 Fed. Reg. 43,358, 43,379 (Aug. 30, 1991) ("If the hospital requests this recalculation, this SSI percentage will be used, whether it is lower or higher than the SSI percentage calculated using the Federal fiscal year."); 60 Fed. Reg. 45,778, 45,812 (Sep. 1, 1995) ("[I]t has been our consistent policy that a hospital that requests a recalculation of its Medicare Part A/SSI percentage based on its cost reporting period must accept

the result of that calculation in place of the Federal fiscal year calculation."); *id.* ("We would perform a recalculation only once per hospital per cost report period, and the resulting percentage becomes the hospital's official Medicare Part A/SSI percentage for that period."); 70 Fed. Reg. at 47,439 ("[A] hospital may request to have its Medicare fraction recomputed based on the hospital's cost reporting period . . . and the hospital must accept the resulting DSH percentage for that year, whether or not it is a more favorable number than the DSH percentage based on the Federal fiscal year.").

48.     The use of SSI fractions based on the federal fiscal year in revised NPRs issued on remand for these plaintiff hospitals would violate both the DSH statute and the agency's own implementing regulation providing for calculation based on hospital cost reporting periods if elected by hospitals, and further providing for the inability to change that election.  It would also violate CMS's September 6, 2019, transmittal, specifically providing hospitals the choice not to receive revised NPRs on remand using federal fiscal year SSI fractions.  Under these authorities, hospitals are entitled to DSH payment determinations on remand incorporating SSI fractions based on the hospitals' cost reporting periods.

49.     Accordingly, the plaintiff hospitals request an order requiring Defendant to ensure that the Medicare administrative contractors apply initially on remand SSI fractions for the cost reporting periods identified in paragraph 26, based on cost reporting periods rather than federal fiscal year.

## RELIEF REQUESTED

50.     The plaintiff hospitals request an Order:

A.     requiring Defendant promptly to cause the agency's administrative contractors, within 30 days after the Court's order, to apply revised SSI fractions calculated by the agency on

remand under CMS Ruling 1498-R and issue revised payment determinations reflecting additional DSH amounts due them as a result of the recalculated SSI fractions;

B.      requiring Defendant to ensure that the agency's contractors apply initially on remand SSI fractions for the cost reporting periods listed in paragraph 26 calculated based on cost reporting periods rather than the federal fiscal year;

C.      requiring Defendant to pay the plaintiff hospitals interest on the additional sums due as result of the revisions to the SSI fractions, calculated in accordance with 42 U.S.C. § 1395oo(f)(2);

D.      requiring Defendant to pay legal fees and costs incurred by the plaintiff hospitals in bringing this action; and

E.      providing such other relief as the Court may consider appropriate.


Respectfully submitted,


*/s/ Stephanie A. Webster*
Stephanie A. Webster
   D.C. Bar No. 479524
Alex J. Talley
   D.C. Bar No. 1020488
ROPES & GRAY LLP
2099 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Phone: (202) 508-4859
stephanie.webster@ropesgray.com

Counsel for Plaintiffs


Dated:  March 14, 2023